IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

RING ENERGY, INC., a Nevada corporation, )
)
    Plaintiff, )
)
vs. ) Case No. 15-cv-00109-JHP-TLW
)
CALVIN R. HULLUM, JR., an individual; )
CRH MISSISSIPPI SOUTH FUND, an Oklahoma )
Corporation; CHARLES M. CRAWFORD, an )
individual; PONTIOUS MISSISSIPPI SOUTH )
FUND, an Oklahoma corporation and BENGALIA )
LAND & CATTLE COMPANY, an Oklahoma )
corporation, )
)
    Defendants. )

## **OPINION AND ORDER**

Before the Court are defendants' Oral Motion for Expedited Discovery (dkt. 39) and plaintiff's Motion to Quash Subpoena Duces Tecum to Bob Baxter (dkt. 42).[1] Defendants' motion seeks permission to conduct early discovery for the purpose of obtaining certain seismic reports from plaintiff. Plaintiff's motion asks the Court to quash a subpoena, which seeks the same seismic reports from third party Bob Baxter, the person who prepared the reports for plaintiff.

### **BACKGROUND**

Plaintiff Ring is an "oil and gas exploration, development, and production company" and defendants are two individuals and a company "jointly engaged in the acquisition and sale of oil and gas leases." (Dkt. 10). In 2012, the parties entered into a merger agreement by which defendants were to convey certain oil and gas leases to Ring in exchange for cash and Ring stock. Id. Ring contends that defendants failed to meet their obligation to convey the leases. Id.

---

[1] All references to defendants collectively in this Order are to defendants Calvin R. Hullum, Charles M. Crawford, and Bengalia Land & Cattle Company.

As a result, Ring alleges a number of causes of action, including breach of contract and warranty, unjust enrichment, and actual and constructive fraud. Id. Ring seeks damages for each of these claims. Id.

Defendants deny Ring's allegations and raise a number of affirmative defenses. (Dkt. 25, 27). Defendants also assert counterclaims for breach of contract, tortious interference with a business relationship, negligence, and specific performance. Id. Certain of defendants' breach of contract counterclaims rely on provisions of the merger agreement which defendants argue require Ring to provide them with information (including the seismic reports) related to the conveyed oil and gas leases. Id. Defendants' tortious interference claim relies on the same provisions. Id. Defendants' arguments also make clear that their claim for specific performance of the merger agreement, although vaguely asserted, implicates these provisions as well. More specifically, defendants allege that Ring must provide them with what is defined as "Lease Information" in the merger agreement. Id. Defendants argue that Lease Information includes the seismic reports. Defendants also argue that the merger agreement requires Ring to provide them with sixty-days notice of any expiring leases in order to give defendants time to decide whether or not they will attempt to renew or extend such leases for their own benefit. Id.

Defendants have sought to obtain the seismic reports in two ways. First, defendants seek expedited discovery from Ring. Second, defendants served a subpoena duces tecum on Baxter, the professional geologist commissioned by Ring to obtain seismic data and create the seismic reports. (Dkt. 39; 42-2).

The parties' dispute began when defendants filed a Motion for Emergency Hearing to Compel Production of Documents on May 27, 2015. (Dkt. 24). In that motion, defendants asked the Court to compel Ring, on an expedited basis, to produce the seismic reports. Defendants argued that, under the terms of the merger agreement, Ring was required to make available to

defendants "all information regarding oil and gas activity on the Leases, including but not limited to, daily drilling reports, logs, completion information, core sample information, geological information, geophysical information, title opinions, and broker reports." Id. Defendants had learned that Baxter held in his possession seismic reports related to the leases, so they requested that Ring provide a copy of those reports on an expedited basis. Id. In its response, Ring argued that there was no basis for defendants' request for expedited discovery. (Dkt. 30).

The Court held an initial hearing on June 15, 2015. (Dkt. 34, 35). To the extent that defendants' motion sought to compel production of documents on an expedited basis, the Court denied the motion without prejudice. (Dkt. 35). The Court explained that "because the Rule 26(f) conference ha[d] taken place, either party [wa]s free to conduct discovery (no party has). If, after service of discovery, Defendants or Plaintiffs believe the other should be required to respond on an expedited basis, the Court will consider such a request at a hearing." Id. The Court set the time and date for that hearing and ordered the parties to notify the Court if the hearing was needed. Id.

Defendants requested the hearing, which the Court held on June 22, 2015. (Dkt. 39, 40). At the hearing, defendants stated that initial disclosures were due the following week and that the seismic reports should be included in those disclosures, thereby mooting the request for expedited discovery. (Dkt. 40). Alternatively, defendants noted that the seismic reports were due under the subpoena to Baxter and, if received, would also moot the request for expedited discovery. Id. Ring advised the Court, however, that it did not intend to produce the seismic reports as part of the initial disclosures and planned to file a motion to quash the subpoena. Id. The Court set a briefing schedule for the motion to quash and conducted a hearing on both the motion to quash and the motion for expedited discovery on July 2, 2015; the Court then allowed

the parties to file supplemental briefing for the purpose of addressing defendants' specific performance counterclaim. (Dkts. 49, 47, 48).

In its motion to quash, Ring lists a number of reasons that defendants should not receive copies of the seismic reports. Ring argues that it undertook the expense of acquiring the seismic studies, at a cost of $500,000.00 because defendants failed to provide all of the information required under the terms of the merger agreement. (Dkt. 42). Ring also argues that the merger agreement does not require it to provide the seismic reports to defendants because the definition of "Lease Information" does not include the word "seismic." (Dkt. 42, 42-3).

Ring further argues that the seismic reports qualify as trade secrets and, therefore, defendants must establish that the reports are "material and necessary" to defendants' claims before the reports can be obtained through discovery. (Dkt. 42). Additionally, Ring argues that, because it has alleged fraud which would render the merger agreement voidable, the Court must first find that the merger agreement is enforceable against Ring before ordering production of the seismic reports. Id. Ring argues that requiring it to produce the seismic reports "is effectively issuing an ultimate finding in the Defendants' favor on their breach of contract counterclaim." (Dkt. 42).

In their response, defendants argue that they are entitled to subpoena information from a nonparty that is "relevant, not privileged, and admissible or reasonably calculated to lead to the discovery of admissible evidence." (Dkt. 44). They note that any protection for trade secrets is limited and first requires Ring to establish that the seismic reports constitute trade secrets and that disclosure would be harmful to Ring. Id.

Defendants contend that the seismic reports are not trade secrets, that disclosure of the seismic reports would not be harmful to Ring and, in any event, that defendants are entitled to the seismic reports pursuant to the terms of the merger agreement. Id. Defendants further argue

4

that the information contained in the seismic reports is necessary to establish one or more of their counterclaims against Ring. Id. Finally, defendants state that they will agree to a protective order, thereby eliminating any concerns that Ring may have about confidentiality. Id.

At the hearing, both parties relied heavily on arguments related to the merits of their respective claims. Ring argued that allowing defendant access to the seismic reports would put the issue of damages ahead of the resolution of the validity and/or enforcement of the merger agreement. (Dkt. 49, Hearing, Caroline Lapish). In other words, Ring urged the Court to address the contract issue first, and if the Court finds that the merger agreement is valid and enforceable, to then determine whether the seismic reports are discoverable. Id. Alternatively, counsel for Ring reiterated its argument that the seismic reports fall outside the documents to which defendants would be entitled under the merger agreement in any event. Id. Finally, counsel for Ring stated that she believed defendants had asserted a counterclaim for specific performance and, assuming she was correct, ordering Ring to produce the seismic reports was tantamount to issuing judgment in favor of defendants on their specific performance counterclaim.[2] Id.

Defendants claimed that the seismic reports are important for two reasons related to the enforcement of the merger agreement: (1) to permit defendants, under the terms of the merger agreement, the opportunity to have all available information before making a determination regarding the purchase of expiring leases; and (2) to protect defendants' interests, as Ring shareholders, in the proper operation of the business. (Dkt. 49, Hearing, Terence Brennan). With respect to the use of the seismic reports for purposes of the litigation itself, defendants argued that the information is subject to production under the discovery rules because it is relevant to defendants' counterclaims and necessary in order for defendants to prove those counterclaims.

---

[2] Defendants have indeed asserted a claim for specific performance of the merger agreement. (Dkt. 25 at 33).

Id. Defendants also argued that obtaining the seismic reports would allow them to mitigate their damages because they could use the reports to evaluate the value of any expiring leases and purchase those they determine to be valuable. Id.

Finally, defendants argued that Ring was using the seismic reports to its advantage, thereby placing defendants at a disadvantage because the contract language in the merger agreement gives defendants the right to access the reports. Id.

## ANALYSIS

Federal Rule of Civil Procedure 26 provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . .." Fed. R. Civ. P. 26(b)(1). Thus, the first issue is whether or not the seismic reports are relevant to any party's claim or defense, not whether the merger agreement contractually obligates Ring to provide the seismic reports to defendants. If the seismic reports are relevant to a claim or defense, then they should be produced unless there is a basis under the Rules not to do so. In this regard, the Rules permit limitations on discovery which is overly burdensome and discovery which seeks privileged or confidential information. Fed. R. Civ. P. 26(b)(2), (c). Such limitations, however, are left to the broad discretion of the trial courts and are reviewed under an abuse of discretion standard. See Kidd v. Taos Ski Valley, Inc., 88 F.3d 848, 853 (10th Cir. 1996) (citation omitted) (holding that "[t]he decision of a district court to enter a protective order under Rule 26(c) is reviewed for an abuse of discretion").

For purposes of the motions at issue here, defendants' arguments focus on their claims under Section 11.6 of the merger agreement, which provides that

> To the extent allowable by applicable law, Ring agrees to make available to the Target Shareholders [defendants], at Ring's place of business and at the Target Sharholders' own cost and expense, all information regarding oil and gas activity on the Leases, including but not limited to, daily drilling reports, logs, completion information, core sample information, geological information, geophysical

6

>information, title opinions, and broker reports (the "Lease Information"), contemporaneously with its receipt by Ring. Unless otherwise required by applicable law, the Target Shareholders shall treat confidentially all Lease Information, and the Target Shareholders shall not disclose nor disseminate any Lease Information to any governmental authority or other third party without the prior written consent of Ring. Unless otherwise required by law, the Target Shareholders may use the Lease Information only in connection with the transactions contemplated by this Agreement.

(Dkt. 42-3). The phrase "transactions contemplated by this Agreement" refers to section 11.4 of the merger agreement, which permits defendants the option to purchase any expiring lease that Ring opts not to renew. Id.

Defendants assert nine counterclaims against Ring, including four claims for breach of contract, one for tortious interference with business relationship, one for negligence, one for unjust enrichment, one for specific performance, and one for punitive damages.[3] (Dkt. 25 at 26-34). These counterclaims allege that as part of the merger agreement, defendants became shareholders of Ring, gave up their ownership interest in another entity, and delivered numerous oil and gas leases to Ring. Id.

As to defendants' breach of contract claims, they allege that Ring failed to develop the oil and gas leases and thereby breached the merger agreement. Id. at 27. Defendants further allege that Ring was required, pursuant to Sections 11.4 and 11.6 of the merger agreement, to provide them with the Lease Information, including geological and geophysical information, and that Ring breached the merger agreement by failing to do so. Id. at 28-29. Defendants allege in their counterclaim, and argued at the hearing, that the geological and geophysical information includes the seismic reports. Id. at 28. Thus, the seismic reports are relevant to defendants' breach of contract counterclaims.

---

[3] Defendants' negligence and punitive damages claims are not relevant to the current dispute.

Likewise, defendants' tortious interference claim is grounded on an allegation that Ring failed to comply with a requirement in the merger agreement to give defendants notice of their intent not to renew or extend a lease and to do so "at least sixty (60) days prior to the deadline for extension or renewal right granted under each of the leases." Id. at 30. Defendants argue that they must see the seismic reports in order to know whether or not they would have exercised their alleged right to extend or renew leases that were not extended or renewed by Ring. The Court agrees. If defendants are able to prove that the merger agreement required Ring to give them the referenced sixty day notice and to provide the Lease Information, including the seismic reports, then that information is directly relevant to the issue identified by defendants: whether or not, after having reviewed all of the Lease Information, they would have attempted to renew or extend expiring leases. Certainly, the seismic reports may impact defendants' testimony and any expert testimony regarding which expired leases defendants may have renewed or extended. Thus, the seismic reports are also relevant to defendants' tortious interference claim.

Ring counters that the seismic reports fall outside the definition of "Lease Information" in the merger agreement and, therefore, that Ring is not required to provide the reports to defendants. However, Ring's argument goes to the merits of defendants' counterclaims, not to the relevance of defendants' discovery requests. A finding that Lease Information does not include seismic reports would be a summary finding interpreting the language of the merger agreement; such a finding is beyond the scope of the pending motions and the authority of the undersigned. The questions currently before the Court are whether the seismic reports are relevant to a claim or defense and, if so, whether any restrictions should be placed on the production and/or use of the reports because they are confidential or amount to trade secrets. As noted above, the seismic reports are directly relevant to at least two of defendants' counterclaims.

Nonetheless, and out of an abundance of caution, the Court has reviewed the merger agreement to determine whether defendants' allegations might be characterized as frivolous and, thus, merely a ruse for the purpose of obtaining the seismic information. As set out above, the merger agreement defines "Lease Information" as:

> [A]ll information regarding oil and gas activity on the Leases, including but not limited to, daily drilling reports, logs, completion information, core sample information, geological information, geophysical information, title opinions, and broker reports.

(Dkt. 42-3 at 22). Merriam-Webster's defines geophysical as, "a branch of science that deals with the physical movements and forces of the Earth," and geological (geology) as, "a science that studies rocks, layers of soil, etc., in order to learn about the history of the Earth and its life." A "seismic report" in the context of the oil and gas industry generally refers to ". . . detailed images of the various rock types and their location beneath the Earth's surface . . . to determine the location and size of oil and gas reservoirs." See http://www.seismicsurvey.com.au. Based on the language of the merger agreement and the foregoing definitions, defendant's allegation that Lease Information includes the seismic reports prepared by Baxter is not frivolous because it is not a frivolous assertion that geological and geophysical information includes seismic reports. It is likewise not a frivolous allegation that Ring was required to provide the seismic reports to defendants under the terms of the merger agreement.[4]

For these reasons, the Court concludes that the seismic reports are relevant and, therefore, discoverable. The only remaining question is whether the seismic reports are confidential and/or trade secrets that should be made subject to a protective order.

---

[4] The Court is not finding that the seismic reports were required to be provided under the merger agreement. Rather, the Court is merely finding that defendants allegation in this respect is not frivolous and, thus, can provide a basis for seeking discovery.

"There is no absolute privilege for trade secrets or similar confidential information," but the Court may issue a protective order to limit disclosure of such information. Fed. Open Mkt. Comm. v. Merrill, 443 U.S. 350, 362, 99 S.Ct. 2800, 61 L.Ed.2d 587 (1979). Federal Rule of Civil Procedure 45(d) permits a court to quash or modify a subpoena if the subpoena requires "disclosing a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(B)(i). Similarly, Federal Rule of Civil Procedure 26(c) permits a party to move for a protective order to limit discovery. See Fed. R. Civ. P. 26(c)(1). The rule states that

> [t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: . . . (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; . . . ."

Fed. R. Civ. P. 26(c)(1)(G).

Ring argues, in a conclusory fashion, that the seismic reports are trade secrets. (Dkt. 42; Dkt. 49, Hearing, Caroline Lapish). Defendants argue that the seismic reports are not trade secrets, based on the contractual language of the merger agreement, but acknowledge that the seismic reports are confidential. (Dkt. 44; Dkt. 49, Hearing, Terence Brennan). Defendants have stated that they would agree to a protective order preventing dissemination of the reports to third parties, but they believe that they should be entitled to use the information for purposes outside of the litigation, namely to determine whether to pursue the purchase of leases. Id.

The Tenth Circuit distinguishes between trade secrets and other confidential information. See In re Cooper Tire & Rubber Co., 568 F.3d 1180, 1190 (10th Cir. 2009) (quoting Centurion Indus., Inc. v. Warren Steurer & Assocs., 665 F.2d 323, 325 (10th Cir. 1982) (setting forth the burden of proof on each party when trade secrets are at issue in discovery disputes); Exum v. United States Olympic Committee, 209 F.R.D. 201, 206 (D.Colo. 2002) (establishing the burden

of proof to establish good cause for entry of a protective order under Federal Rule of Civil Procedure 26(c)). For trade secrets, the party seeking the protective order "must first establish that the information sought is a trade secret and then demonstrate that its disclosure might be harmful." Centurion, 665 F.2d at 325 (footnote omitted). The burden then "shifts to the party seeking discovery to establish that the disclosure of trade secrets is relevant and necessary to the action." Id. With respect to confidential information, "the party seeking a protective order must show that disclosure will result in a clearly defined and serious injury to the party seeking protection." Exum, 209 F.R.D. at 206 (citing Pansy v. Borough of Stroudsburg, 23 F.3d 772, 786 (3d Cir. 1994)).

Ring has not met its burden of establishing that the seismic reports are trade secrets. A conclusory allegation is simply insufficient. However, the Court finds that the seismic reports are confidential, but the Court also finds that even were the reports trade secrets, they should be produced subject to a protective order.[5] Initially, the Court notes that the nature of the seismic reports creates a disincentive for defendants to disclose the information in the reports to third parties or to the public, particularly since defendants intend to use the seismic reports to make business decisions regarding the purchase of expiring leases. The information contained in the seismic reports places the holder of that information in a better position to evaluate the value of an expiring lease than someone who does not possess the information. Thus, it is not in defendants' best interest to disclose the seismic information to third parties. As shareholders of Ring, defendants also have an interest in ensuring that Ring is not harmed. Despite these disincentives, the Court does find that the confidential nature of the seismic reports makes a

---

[5] Under the heightened standard used for trade secrets, the seismic reports should be produced because they are necessary to this action for the reason that defendants could not likely establish, or even attempt to establish, that the seismic reports amount to Lease Information and, therefore, had to be provided to them, without access to the reports.

protective order restricting their use appropriate because their disclosure to third parties would result in injury to Ring.

Finally, the Court will address Ring's assertion that disclosure of the seismic reports will grant defendants partial or full relief on one or more of their counterclaims.[6] Specifically, defendants have asserted a counterclaim for breach of contract based on Ring's refusal to provide defendants with access to Lease Information (including the seismic reports) and for tortious interference based on Ring's failure to provide them with notice of expiring leases that Ring is choosing not to renew. (Dkt. 25, 27). Although these counterclaims seek damages as a remedy, defendants have asserted a claim for specific performance of the merger agreement. Id. Based on defendants' arguments at the hearing and based on their briefing, it is clear that at least a part of the performance defendants seek is to require Ring to provide them with the Lease Information, including the seismic reports. Thus, Ring argues that permitting defendants access to the seismic reports through discovery would essentially grant defendants partial relief on their specific performance counterclaim.

It is difficult to find cases in which a party seeks, as part of the ultimate relief, the disclosure of information and then seeks that same information through discovery. Cases in which this situation has arisen include those lawsuits arising out of Freedom of Information Act (FOIA) requests. In this context, the United States Supreme Court has addressed whether discovery requests which, if answered, would provide all of the relief the requesting party could obtain if that party were to prevail on the merits are appropriate. See Cheney v. U.S. Dist. Court

---

[6] Ring has also taken the position that defendants' fraud has rendered the contract voidable and, therefore, any discovery based on defendants' breach of contract claims is premature until the enforceability of the merger agreement is determined. The Court rejects this notion, which would lead to piece-meal litigation in any case involving both breach of contract claims on one side and fraud in the inducement claims on the other. The Court has found no authority, and Ring has offered none, supporting this position in the context of this case.

for Dist. of Columbia, 542 U.S. 367, 388, 124 S.Ct. 2576, 159 L.Ed.2d 459 (2004). The Supreme Court has concluded that in the context of a FOIA lawsuit, such requests are not appropriate. Id. Similarly, the D.C. Circuit has held that "[t]he courts must not grant FOIA plaintiffs discovery that would be 'tantamount to granting the final relief sought.'" Tax Analysts v. I.R.S., 410 F.3d 715, 722 (D.C. Cir. 2005) (quoting Military Audit Project v. Casey, 656 F.2d 724, 734 (D.C. Cir. 1981). In this case, however, providing defendants with the seismic reports does not necessarily provide them with all of the relief they will obtain if they prevail on the merits of their specific performance claim, so long as an appropriate protective order is entered.[7]

Defendants have stated that they want the seismic reports for two reasons. First, they want the reports to prove that they would have renewed or extended various leases that have or may expire. Second, they want to use the reports in order to determine whether or not they should attempt to renew or extend those leases that will expire in the future as they argue is their right under the merger agreement. The first intended use is directly related to the litigation. According to defendants, the second use is also related to the litigation since it not only provides them with the ability to renew or extend leases for their own account, but also it allows them to mitigate their damages. Based on defendants' arguments and statements during the hearings, it is the Court's finding that the primary purpose of the second use is unrelated to the litigation, except that allowing such use would be prematurely granting defendants the relief they seek on their specific performance claim.

As to defendants' mitigation argument, it is possible that the second use might result in the mitigation of defendants' damages; however, defendants can recover those damages, if they prevail, through the litigation without facing a "failure to mitigate" argument from Ring. A party

---

[7] The production of the seismic reports will not grant defendants the relief they seek on their other claims, damages, and as discussed above, the provision of the seismic reports is necessary in order for defendants to establish a number of their claims.

is only required to take reasonable steps to mitigate damages. See <u>Coen v. SemGroup Energy Partners, G.P., LLC</u>, 310 P.3d 657, 668 (Okla.Civ.App. 2013) (holding that, under Oklahoma law, the duty to mitigate damages is "not without limits" and requires a party only "to use reasonable exertion and incur reasonable expense" in order to satisfy the duty to mitigate) (citation omitted); <u>Business Systems Leasing, Inc. v Foothills Automotive Plaza, Inc.</u>, 886 F.2d 284, 287 (10th Cir. 1989) (holding that, under Maryland contract law, the parties to litigation could enter into a contract to waive the duty to mitigate damages). Defendants, by seeking discovery of the seismic reports and specific performance of the contract, are taking reasonable steps to mitigate damages. Ring, through its motion to quash and its effort to prevent the discovery of the seismic data, is preventing defendants from mitigating their damages through renewals or extensions of leases.

Thus, in the absence of an agreement between the parties, the Court denies Ring's Motion to Quash and orders Baxter to produce the seismic reports to defendants. However, defendants may not use the seismic reports for any purpose of other than the litigation, including any effort to negotiate renewals or extensions of leases. The Court acknowledges that this limitation may prevent defendants from mitigating their damages in the event it is determined that defendants would have used the seismic reports to purchase a lease or leases. However, Ring has established good cause for limiting the use of the seismic reports in order to prevent defendants from prevailing prematurely on much of their specific performance claim. In the end, Ring's decision may mean that defendants recover more in the way of monetary damages than they otherwise would have. This risk is one Ring has chosen to take.

## CONCLUSION

For the reasons set forth in this Order, Ring's Motion to Quash Subpoena Duces Tecum to Bob Baxter (dkt. 42) is **GRANTED IN PART AND DENIED IN PART.** The seismic

reports shall be produced within two (2) days of Baxter receiving notice of this Opinion and Order, but they shall only be used for the purposes of this litigation as set forth above. The production shall be made to a third party copy service chosen by defendants, and defendants shall direct the copy service to mark each page of any copy of the seismic reports as "CONFIDENTIAL – litigation use only – OKND Case No. 15cv109."

Defendants' Oral Motion for Expedited Discovery (dkt. 39) is **DENIED.**

SO ORDERED, this the 17th day of July, 2015.

_____
T. Lane Wilson
United States Magistrate Judge